UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH EUGENE LITTLEMOON,<br><br>    Petitioner,<br><br>  v.<br><br>KEN CLARK, Warden,<br><br>    Respondent.<br>_____ / | No. C 09-5431 YGR (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

**BACKGROUND**

In 2006, a Mendocino County Superior Court jury found Petitioner guilty of attempted premeditated murder, aggravated assault, burglary, and criminal gang street participation, consequent to which he was sentenced to a term of seven years-to-life, plus 18 years and eight months. Petitioner was denied relief on state direct and collateral review. This federal habeas petition followed.

Evidence presented at trial showed that in 2006, Petitioner, motivated by gang loyalties, beat Steven Mendez, a member of a rival gang, and his girlfriend Anna Contreras, while his co-perpetrator stabbed Mendez with a knife. Such evidence included (1) Contreras's identification of Petitioner as the attacker, (2) a police officer's testimony that he chased Petitioner as he ran from Contreras's house, (3) that same police officer's testimony that he saw Petitioner cast away the bat, which had blood on it, (4) Mendez's and Contreras's description of the attack as gang-related, and (5) witness testimony that established that Petitioner was a member of the rival gang.

As grounds for federal habeas relief, Petitioner claims: (1) the trial court violated his right to counsel by failing to continue the trial; (2) defense counsel rendered ineffective assistance; and (3) there was prosecutorial conduct.

These claims were raised only to the state supreme court, which summarily denied them. If there is no reasoned state court decision on a petitioner's claims, the federal court must conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006). In the present case, there is no reasoned opinion from any California court addressing the claims raised in the instant petition. Consequently, the Court will conduct an independent review of the record to determine whether the state court supreme court's summary denial of these claims was reasonable.

**STANDARD OF REVIEW**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

### I. Denial of Continuance

Petitioner was arraigned on April 21, 2006 and agreed to a trial date of June 26th. From June 1st until the 26th, the parties had various pretrial conferences, and discussed the juror questionnaire and a possible negotiated disposition. On the day of trial, the 26th, defense counsel stated that she was ready, but that Petitioner wanted to make a motion to continue the trial so that he could find private counsel. The trial court denied the motion as untimely: "This is the date set for jury trial. Questionnaires are being distributed probably as we speak. The court finds the request is untimely and it is denied." (Ans., Ex. K, Vol. 1 at 7.) Petitioner claims that the denial of this motion violated his Sixth Amendment right to

No. C 09-5431 YGR (PR)
3
ORDER DENYING PETITION

counsel.

To establish a constitutional violation based on the denial of a continuance motion, a petitioner must show that the trial court abused its discretion, which will be found if, after carefully evaluating all relevant factors, the denial was arbitrary or unreasonable. *See Armant v. Marquez*, 772 F.2d 552, 556 (9th Cir. 1985). In considering whether the denial of a continuance implicating a defendant's Sixth Amendment right to counsel is an abuse of discretion, the Ninth Circuit has applied the factors set forth in *U.S. v. Robinson*, 967 F.2d 287, 291 (9th Cir. 1992): (1) whether the continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant. *See U.S. v. Mejia*, 69 F.3d 309, 314 (9th Cir. 1995). But the ultimate test remains whether the trial court abused its discretion through an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Houston v. Schomig*, 533 F.3d 1076, 1079 (9th Cir. 2008) (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)) (internal quotation marks omitted).

This claim, which also contains a claim that the trial court failed to conduct an inquiry regarding his motion to change counsel, lacks merit. First, Petitioner fails to show he was denied his right to counsel. In his petition, he says only that *he was not satisfied* with counsel's performance, a dissatisfaction that appears to arise from Petitioner's refusal to agree to a negotiated disposition.[1] This falls short of showing that the trial court's failure to rule on the motion "actually violated [the criminal defendant's] constitutional rights in that the conflict between [the criminal defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn

---

[1] He mentions that on the night of June 26th, that is, after he made his continuance motion, he and counsel argued whether he should agree to a negotiated disposition. Because this argument happened after his motion to change counsel was made, it cannot influenced his wish to change counsel. (Pet. at 8.)

in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000). His lack of supporting detail fails to satisfy the specificity requirements of *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

The record demonstrates, in fact, that defense counsel *was sufficiently prepared* for trial. *See*, e.g., Ans., Ex. H at 5 (defense counsel discussing witness list at June 12th hearing) and 12 (defense counsel discussing her attempts to verify Petitioner's defense at June 16th hearing). Contrary to his argument, the record does not support Petitioner's statement that he was unable to inform defense counsel or the trial court of his desire to substitute counsel until the morning of trial. According to the timeline provided by Petitioner, he had identified other counsel two weeks before trial, which would be on or about June 12th. After June 12th, Petitioner had at least three opportunities to speak with defense counsel before trial began, at the pre-trial hearings on June 15th, 16th and 20th. Given these circumstances, the trial court's denial of Petitioner's request for a continuance to retain private counsel did not violate Petitioner's Sixth Amendment rights. *See*, e.g., *Miller v. Blacketter*, 525 F.3d 890, 896–98 (9th Cir. 2008) (denial of public defender's motions to withdraw and to continue the trial so that Petitioner could retain a private attorney did not violate petitioner's Sixth Amendment right to choice of counsel because (1) petitioner had not yet retained a new attorney, (2) public defender was sufficiently prepared for trial, and (3) motions were made the morning trial was set to begin). Petitioner is not entitled to habeas relief on this claim.

Second, and most significantly, there has been no showing the denial of the continuance was unreasonable and arbitrary, as the *Mejia* factors weigh against Petitioner. One, the motion was made on the day of jury selection, a day Petitioner had agreed to and known about for two months. It was reasonable to conclude that a continuance at such a late date would inconvenience witnesses, the court, counsel, or the parties. The Supreme Court accords trial courts wide latitude "in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (internal citations omitted). Two, Petitioner offers then (or now)

no legitimate reasons for the delay. Petitioner merely references the refusal to agree to a negotiated disposition, which in no way shows a breakdown in the client-counsel relationship.

Given the circumstances, the delay appeared tactical on Petitioner's part. This record shows no indication that the denial of the motion was unreasoning or arbitrary. Rather it was based on sound reasons. In its independent review of this claim, this Court concludes that the state court's rejection of this claim was reasonable. Accordingly, this claim is DENIED.

## II. Assistance of Counsel

Petitioner claims defense counsel rendered ineffective assistance by failing to (A) conduct a reasonable pre-trial investigation; (B) present mitigating evidence and key facts; and (C) have Petitioner testify at trial. He also claims that appellate counsel rendered ineffective assistance for failing to raise certain claims on appeal.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, id. at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690 ). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Id.* at 788 (quotation and citations omitted). When Section 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### A. Pre-trial Investigation

At trial, the girlfriend Anna Contreras testified that she told the 911 operator that the perpetrators said that they were going to "kill" her. (Ans., Ex. K, Vol. 1 at 173–74.) Petitioner claims that such testimony was false because the audiorecording of the 911 call would have caught the perpetrators' statement, which it did not. Defense counsel, according to Petitioner, rendered ineffective assistance by failing to employ an expert witness to analyze the recording, and testify to this discrepancy. This claim fails because "[s]peculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Petitioner's other allegations that defense counsel was not prepared for trial and conducted an inadequate investigation are undetailed and conclusory. Not only does his lack of supporting detail doom the claim as it does not meet the specificity requirements of *Felix*, 545 U.S. at 655,[2] the record, cited above, shows that defense counsel was prepared for trial. In its independent review of this claim, this Court concludes that the state court's rejection of this claim was reasonable. Accordingly,

---

[2] His one specific claim — that defense counsel failed to request an attempted voluntary manslaughter lesser-included offense instruction — is also conclusory and undetailed, showing no justification for such an instruction. Also, if his defense was innocence, it would be contrary to ask for such instruction — he either attacked the victims he or did not. The exact criminal offense is irrelevant under an innocence defense theory. Counsel's (assumed) strategic decision not to ask for such instruction is bolstered by state law: "when a defendant completely denies complicity in the charged crime, there is no error in failing to instruct on a lesser included offense." *People v. Gutierrez*, 112 Cal. App. 4th 704, 709 (Cal. App. 2003) (citing *People v. Medina*, 78 Cal.App.3d 1000, 1005–1006 (Cal. App. 1978).

this claim is DENIED.

### B. Mitigating Evidence

Petitioner claims that defense counsel rendered ineffective assistance for failing to (1) present evidence that Contreras was biased against him, (2) show that the fingerprint evidence did not link him or Mendez (who allegedly grabbed the bat during the attack) to the bat, (3) present evidence that Mendez and Contreras were not at home on the night of the attack and therefore their testimony was false, and (4) show that if the perpetrators were trying to kill Mendez "they would have stabbed him multiple times, not once." (Pet. at 9.)

These claims fail. None of this allegedly mitigating evidence overcomes the extremely persuasive and powerful evidence provided by Mendez and Contreras, who called 911 from their house on the day and at the time of the attack, and received medical treatment for stabbing and other wounds later that day. Nor does it counter in any significant way the independent testimony of the police officer who saw Petitioner run from the house and discard a bat.

Petitioner's defense at trial was that he was entirely uninvolved in the crimes. As that was his defense, it would have been incongruous to present evidence that one stab was insufficient to show an intent to kill. If Petitioner was innocent, he had no need to speculate on the evidence of intent. In sum, because Petitioner has not shown that he was prejudiced by counsel's alleged deficient performance, the state appellate court's rejection of these claims was reasonable. In its independent review of this claim, this Court concludes that the state court's rejection of this claim was reasonable. Accordingly, this claim is DENIED.

### C. Failure to Have Petitioner Testify

Petitioner's last claim is that he "never got to tell the jury what happened." (Pet. at 10.) This is insufficient to overcome the presumption that he willingly waived his right to testify. Waiver of the right may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. *See United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citation removed). A defendant who

wants to reject his attorney's advice and take the stand may do so by insisting on testifying, speaking to the court or discharging his lawyer. *See id.* A defendant waives the right to testify if he remains silent in the face of his attorney's decision not to call him as a witness. *United States v. Pino-Noriega*, 189 F.3d 1089, 1094-95 (9th Cir. 1999); *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993). There is no evidence in the record that Petitioner spoke to the court. Though he tried to discharge his lawyer at the beginning of trial, the record does not indicate that he did so because defense counsel would not have allowed him to testify. Accordingly, Petitioner has not shown that counsel prevented him from testifying, and therefore has not shown ineffective assistance. In its independent review of this claim, this Court concludes that the state court's rejection of this claim was reasonable. Accordingly, this claim is DENIED.

### D. Assistance of Appellate Counsel

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *See id.* at 1434 n.9 (citing *Strickland*, 466 U.S. at 688, 694).

Habeas relief is not warranted here. The claims raised in the instant petition encompass the same ones for which appellate counsel failed to raise on appeal. Because all the claims discussed above lack merit, appellate counsel cannot have rendered ineffective assistance by failing to raise them. As those claims are lacking, Petitioner cannot show a reasonable possibility that but for appellate counsel's actions, the outcome of the proceeding would have been different. In its independent review of this claim, this Court concludes that the state court's rejection of this claim was reasonable. Accordingly, this claim is DENIED.

### III. Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct by relying on false evidence. In support of this claim, Petitioner presents a note from Mendez wherein he apologizes to Petitioner, and states that he and Contreras now think that Petitioner *may* not have been their attacker: "And we know it mite [*sic*] not of [*sic*] been u [*sic*]." (Pet. at 16.)

A defendant's due process rights are violated when a prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation omitted). Under *Darden*, the first issue is whether the prosecutor's conduct was improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

Petitioner's note is insufficient to establish that the evidence presented at trial was false. First, the note is not verified and therefore unreliable, rendering unpersuasive his contention that the note casts doubt on Mendez's and Contreras's identifications. Second, the note largely just repeats what Mendez acknowledged at trial, that he could not identify anyone as his attacker. (Ans., Ex. K, Vol. 1 at 93.) Also, the other evidence supportive of Petitioner's guilt justified the prosecutor's belief that he was presenting accurate, rather than false evidence. On such a record, Petitioner has not shown that the prosecutor committed misconduct. In its independent review of this claim, this Court concludes that the state court's rejection of this claim was reasonable. Accordingly, this claim is DENIED.

### CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED. A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

10

No. C 09-5431 YGR (PR)
ORDER DENYING PETITION

*McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.  The Clerk shall enter judgment in favor of Respondents and close the file.

**IT IS SO ORDERED.**

DATED:  March 27, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**